v. Rafael Hernandez-Montanez v. Pedro Pierluisi-Urrutia at all. At this time, would counsel for the appellant, represented by Mr. Kremer, please come to the podium, introduce himself, and begin. Good morning. Matthew Kramer of Melvin A. Myers on behalf of the appellant, the governor of Puerto Rico, Pedro Pierluisi. May I reserve two minutes for rebuttal? Yes, you may. I will address the jurisdictional question and then turn the podium over to my partner, Mr. Suchon, who will speak for four minutes on the 204A question. May it please the court. This case is not about the government avoiding Judge Swain. This case is about the board avoiding all other judges in the district and ensuring that only Judge Swain hears this matter. This is not how PROMESA works. Section 106A of PROMESA vests district courts with jurisdiction over actions arising out of PROMESA, except as provided in Title III. Title III includes a separate jurisdictional grant, Section 306A2, that says the Title III court can only hear cases that arise in, arise under, or are related to Title III. When a matter is commenced in the Title III court, this jurisdictional grant must be satisfied. In this case, the board invokes the lower court's Title III jurisdiction by filing this as an adversary proceeding. Notwithstanding this, the board says they don't need to establish Title III jurisdiction because this action could have been filed in the district court and Judge Swain is an Article III judge sitting by designation. But, Your Honors, if this were correct, this would mean that the board could circumvent congressionally imposed limitations on the court's Title III jurisdiction and file any PROMESA-related matter in the Title III court to be automatically heard by Judge Swain. This is wrong. The board's theory of jurisdiction would nullify Section 306A2. So, let's look at PROMESA Section 308A. This says that the Chief Justice of the United States shall designate a district court judge to sit by designation in the Title III court. And PROMESA 307 provides that the venue of the Title III court shall be a district court. So, we know that the Title III court will be a district court and that the judge will be an Article III judge. The board says that all of this structure presupposes that Judge Swain exercises jurisdiction as an Article III judge in the District of Puerto Rico and thus can hear any matters arising out of PROMESA pursuant to Section 306A2 exist. The board is correct, right, that we know that it has to be a Title III judge and that it has to be a district court. And yet, Congress still put in PROMESA 306A2, which specifically limits the jurisdiction of the court to matters arising under or related to Title III. Could you, I think would be helpful, make your other points, but it would be particularly helpful if at some point you address the relate to branch of the argument. Yeah, certainly, Your Honor. I can bypass that too now, given my time. So, as related to, I think there's a few things. Judge, the lower court found that there was either arising in or related to jurisdiction based on a provision of the confirmation order. However, there's ample case law that stands for the proposition that you cannot create jurisdiction simply by putting a provision into a confirmation order. And here, the provision that the lower court relied on said that pursuant to Section 108A2, that there are certain prohibitions on government action, right? It said that it just merely acknowledged the fact that Section 108A2 exists. It does not create a substantive provision that otherwise, that would create jurisdiction in this court, right? And how do we know that? Well, we know that because we can look at the paragraph itself, right? It says pursuant to Section 108 is the lead-in. So, and the lower court also said that the substantive decision here is Section 108 and 204, right? The court found that there was no distinction between what the confirmation order provided or the relief the board is seeking under 108A2. And so, it cannot be that the confirmation order created arising in or related to jurisdiction over every future 108 dispute simply by putting in the order, you know, an acknowledgement that a separate provision of Title I and Title II existed. So, on the, you know, there's two can exist elsewhere, right? That's the test for arising in. We know it can exist under Title I and Title II in district court. With related to, there's also the issue of the close nexus test. At this juncture, the close nexus test applies after a plan has been confirmed. In this case, the plan has been confirmed. And based on this court's decision in Ray, may I finish my sentence? You know, on that, you're, I think, finally getting to the point that most concerns me. Under, even if we adopt the close nexus test, it seems we've gone out of our way, I think it's in Boston Regional, to make clear that that's a context-based analysis. And giving the origins of PROMESA and what Congress was trying to deal with, the severe problems that it was trying to address, and given the prominence the labor market reforms had throughout the whole proceeding, how could we say it's an abuse of discretion to find that there was a close nexus here between what the board was trying to do and the estate and the plan of confirmation? I believe the close nexus was only found based on paragraph 25 of the order. I would submit that you are correct that the close nexus test looks at context, and the majority of courts hold that the close nexus test applies. But in Boston Regional, the context was a liquidating trust. And that was the context where the court said, the test doesn't apply here. In this case, the Commonwealth is the polar opposite of a liquidating trust. And if anything, the policies in favor of applying the close nexus test, where there's considerations of sovereignty and an enroachment on government action, should sway even more in favor of applying that more stricter test in limiting the court's bankruptcy jurisdiction post-confirmation. If the concept here, if the driving concept behind this legislation is to try to get the Commonwealth back on sound economic footings going forward into the future, and if we were to accept, whether we agree with it or not, the board's findings that labor market reforms were a necessary step in getting the Commonwealth on sound economic footings, it would seem a little bit unusual that Congress would intend that the whole process of PROMISO can go forward, a plan developed, approved after a lengthy process. And then the whole thing would be vulnerable to backtracking on the very reforms that set it up. And yet, that wouldn't relate to the proceeding in a way that would let the Title III court weigh in on it. That's the best argument that I see against the position that you're advocating. Your Honor, and I appreciate that. And I would say that you go to Title I and Title II of PROMISO. You don't go to the Title III court. Although that is the court that confirmed the plan, there's provisions under Title I. And just let's think about this. Yes, let's do think about this. I don't think your Title I and Title II response comes anywhere close to addressing the point that Judge Kayada has just made. The language is related to our court. Our precedent has been to read that broadly and to read it in context. So how does it help you to point to Title I and Title II? Because, Your Honor, I believe that is the correct, that is where the concern that the judge has that this overturns everything that's been done in Title III and that creates the close specific provision of PROMISO that allows for the invalidation of Act. If this confirmation order never said pursuant to Section 108A2, of course there would not be provision of a confirmation order or plan that just says legislation can be overturned if it's inconsistent with this plan. This was anchored in 108A2. That's what the confirmation order itself says. So it's clear that the ability to, the nexus to this plan is the nexus that 108A2 creates, right? But it doesn't, it doesn't create a close nexus. Excuse me, does the related to language contain an exception for anything that might be covered by Title I and Title II? Has any court ever said that? Judge, I don't believe that has ever been before any court, right? And the text plainly does not say that, correct? That's correct. All right. Suppose, suppose we have a plan, this plan was confirmed and then two days later, the Commonwealth decided to undo every single piece of legislation that had been adopted at the behest of the board and that was mentioned in the plan and go back to square one. And then suppose that the court knew that that was going to happen before it approved the plan of confirmation. Might the court, might the Title III court have said, I'm not going to approve the plan of confirmation if, if it's, if we know this is what the future brings, because it's doomed to fail. In that context, respectfully, there would certainly be a close nexus, right? There would be a close nexus. The key issue here, which my partner, Mr. Huchon, will talk about more is Act 41 only has unknown speculative, some future potential implication. It seems then we have agreement on the basic principle, but on the facts, you're saying this wasn't enough of a, of a retrenchment. Absolutely, Judge. I, I, I completely can see that there could be a legislation that is enacted that undoes the crux of the plan. It could be legislation that makes it impossible for the Commonwealth to service its general obligation bonds that were issued under the plan. In that context and other circumstances, there would certainly be a close nexus. And then who, let's accept for purposes of argument, the assumption that that's the retrenchment would justify the assertion of jurisdiction, but a lesser or trivial and non-existent amount would not. Who then makes the classification of a particular change as falling into the former or the latter category and what standard of review then applies to our consideration of that determination? Your Honor, I believe that the test is the you know, I, I don't know what the standard review for would be for whether or not that was incorrect. I believe it's a NOVA review. It's, it's based on the legal standard that is, you know, the closed nexus test. I think you're out of your time, although we've used up a lot. If you want to take another minute to hit a point, if you were not able to get to, otherwise you've got your reserve time. I'll reserve the remaining of my time. All right. Thank you. Thank you, counsel. At this time, Mrs. Sushant, please introduce yourself to begin. Good afternoon. Bill Sushant from the Melvinian Myers for Appellant Governor Pierluisi. May it please the court. I'd like to focus on the narrow question, whether the governor was macroeconomic effects, how the labor reforms would affect workforce participation, thereby potentially altering the tax base and affecting the Commonwealth's revenues. The stringent requirement, the title three court imposed is at odds with both remains as plain language and Congress's own practices for assessing the budgetary effects of new legislation. According to an August 2nd, 2021 report of the congressional research service, which we cited in our papers, the congressional budget office and joint committee on taxation estimates of the effects of new federal legislation, quote, do not typically include the macroeconomic effects of individual behavioral responses, such as changes in labor supply and the capital stock. This apples and oranges, I mean, how Congress and the CBO decides to budget and stuff. Uh, I, I can see pointing at it, but it's kind of a stretch of an analogy, isn't it? Well, but there's also a reason why Congress doesn't do it. Council, you surely have better arguments than that one. Would you like to trot them out for us? Certainly, your honor. The, the, the point is that Congress in its macroeconomic modeling, because it used three different words that show that first Congress made clear that an estimate is not required in every case and only requires an assessment of the impact. If any, that a new law will have that clearly indicates that there are laws that would not have an effect that needs to be estimated and macroeconomic effects are a result of any piece of legislation yet Congress understood and put in the, in the, the act, if any. Second, Congress used the words will have. Didn't you, in your brief at page 39 to 40 concede that this legislation could have secondary effects that might affect unemployment? It, it certainly could, your honor. And wouldn't that have an effect on the, on the budget of the Commonwealth? It could, your honor. There, there's no doubt that it could. The problem is that no one knows what those effects will be. But that's why their statute says estimate, isn't it? Well, the statute says estimate because you need to provide your best guess as to what effect something will have if you need to provide an estimate in the first place. But here, because the effects are secondary. Excuse me. Um, I don't believe any dictionary defines estimate as best guess. And as I recall your briefing, um, you seem to suggest that the governor thinks that these so-called reforms will actually cause workers to leave the mainland and go to Puerto Rico and increase the labor pool there. And yet, um, that's a suggestion you put forward in your brief. I assume it was done in good faith and you have some basis for it, but there's nothing in the governor's estimate that supports that theory at all. In fact, there's nothing in the estimate. Well, a FAFSA certification does raise the explanation that in fact, the intention of the law is to increase employment participation on the island. And the DevTech report that was attached to it also explains the basis for that, that hope and that aspiration. No one can know until the law has actually been in effect, whether it will increase labor participation or decrease labor participation. I can ask you a factual question that wasn't clear to me. When I look at the certificate certificates that were or it seems the DOL limited its input to impact on the DOL. That's correct, your honor. And then there's a treasury certificate, but that seemed to be limited to one year and also limited to the treasury. The treasury certificate was limited to the treasury labor to labor. Technically, is that, is that what the statute calls for as opposed to a certificate of the Commonwealth? Well, and then there's the, the OMB certification as well. And so your honor, the way that the process works is that the government assesses what parts of the government, what agencies will be affected by the new legislation, asks for estimates from those agencies, collects them, and then a FAFSA makes the ultimate certification. Thank you. Unless there are any other questions, I know I am over time. I think I believe you have one more of your colleagues to argue. Thank you, your honor. At this time, would Mr. Martinez-Luciano please introduce himself on the record to begin? Yes. Good morning. My name is Jorge Martinez-Luciano. I represent Appaland, Speaker Hernandez-Montanez. And I wanted, if I may be allowed to address Judge Callada's concern regarding any relationship or need that may have arisen from the fact that the, that a plan was confirmed for the Commonwealth and having matters relating to Section 108 and Section 204A litigated as under the bankruptcy proceeding. And we submit that Section 108.2 and Section 204 are designed to work outside, independent from, and regardless of the existence of a Title III proceeding. Title III proceedings have been filed only for six, I believe, covered territorial entities. There's dozens of covered territorial entities that are subject to fiscal plans and are subject to those provisions. And any breach by the University of or other entities that have been decreed as covered territorial entities, that, for instance, they enacted regulations that are contrary to the purposes of PROMESA and need to be annulled under Section 108 as per the board, would have to be filed before the district court. So we were creating a two-tier system where for the Commonwealth or for any entity that has a confirmed plan, it is a bankruptcy matter. But for all other covered territorial entities, it is a civil matter for the district court to discuss. Are you saying that you could have a, the Commonwealth itself, if it hadn't been put into Title III, it still had certificate obligations? Correct. And those would have been enforced in the District Court of Puerto Rico? Under Section 106. And so, except all that presumption, the fact is there was a Title III proceeding. And doesn't that require us to then ask this other event, the certificate, does it relate to that proceeding? If it does, why wouldn't it then probably be brought in that proceeding? Even if absent that proceeding, it could have alternatively been brought in the because we agree with the governor that the close nexus analysis applies. And in this particular case of a statute involving, that is far removed from public expenditures, we don't see any such close nexus. And bankruptcy jurisdiction, whether it is general bankruptcy jurisdiction under Title 28 or bankruptcy jurisdiction under 306 Title III, is created because the bankruptcy proceeding itself has elements that are needed or expertise, bankruptcy and expertise is needed to adjudicate the specific claim. And in this case, we don't see how determining whether or not a certification is Isn't the whole purpose of the plan based on an assessment and hope, but hopefully more than a hope, that it will work? Yes. And so, if something happens right after it's passed that changes the status quo in a way that makes it less likely that it will work, at least in the judgment of the board and the Title III court, why wouldn't one logically view that as relating to the plan? Because the effect, we can say that of every single civil dispute, which is why both the governor and the speaker are concerned, if that rule were to be applied, every single civil dispute arising under the PROMESA regime would be a bankruptcy matter. And we could be three years after the plan was confirmed, hearing appropriate proceedings on matters that are not directly germane to that bankruptcy without there being, because the flip side of the question is, why adjudication by any district judge from the District of Puerto Rico, whoever gets the case assigned, would be deficient or subpar as compared to adjudication on an adversary proceeding. So we believe and we're very concerned that certainly PROMESA is a very unique creature of Congress. We all know that and we're learning about PROMESA as we go. And this course has developed along PROMESA up during the past few years. But in the general bankruptcy context, we were unable to see any similar rule of thumb where pretty much there was this open-ended jurisdiction to receive any civil proceeding relating to the debtor under the related two rubric. Thank you. The court doesn't have any more questions for me. Thank you. Thank you, counsel. At this time, Attorney Harris would introduce himself on the record to begin. May it please the court. My name is Mark Harris and I represent the Financial Oversight and Management Board for Puerto Rico. I will be addressing jurisdiction and then my colleague, Mr. McGovan, will address Section 204. The governor argues that there was no jurisdiction to hear this case and that's wrong for two reasons. First, even if the jurisdictional provision within Title III, Section 306A2 of PROMESA did not apply, there was still subject matter jurisdiction under Section 1331 of Title 28 because this is a federal question case and also under Section 106 of PROMESA. The governor, in fact, concedes. That would mean to say that if there were a car accident and $100,000 worth of damages, that could go automatically filed with the Title III court with the Title III caption if what you just said is correct. Your Honor, the other side has argued this exclusively based on subject matter jurisdiction. It's in their brief over and over and over that the court did not have subject matter jurisdiction. That argument can't be right. Judge Swain is an Article III judge sitting on the District of Colorado. She heard this case in that capacity. In fact, we cited the federal question jurisdiction in our complaint in addition to Section 306A2. Mr. Harris, our court tends to write narrowly. If there is related to jurisdiction under Title III, that would resolve this matter of jurisdiction, wouldn't it? Could you perhaps address why you think this is related to? Yes, Judge Lynch. Related to jurisdiction is satisfied under 306A2 really for the reasons that the court's already mentioned during this oral argument. The court below found that paragraph 25 of the plan of adjustment as contained in the confirmation order specifically addresses this situation, which is that it requires there to be compliance with existing fiscal plans. In this case, the fiscal plan for 2022, like every fiscal plan that's no retrenchment, no retreat on the labor reform. Suppose the plan of confirmation said it requires compliance with all laws. By that rationale, any violation of any law by the Commonwealth could be brought in the Title III proceeding because of that provision in the plan. It seems to be a little bit of an overbroad argument. I agree with you that there may be some limits here as to what could be incorporated, but I don't think we're anywhere near those limits for a couple of reasons. First of all, the other side, the governor and the legislature agreed to the inclusion of paragraph 25. They say in their brief something like, well, we didn't know it was going to be used this way. It's exactly what it says. I mean, it's exactly what it provides. That doesn't distinguish my hypothetical. No. In your hypothetical, in addition, we get to the point that your honor mentioned before, which is that in context, labor reform is absolutely crucial and it has been since the beginning of time, since the beginning of the passage of PROMESA to the future of the Commonwealth and its finances. It's been insisted upon since the beginning. It would make no sense for that core situation not to be covered here, and that's in fact why it was covered. That argument would seem to be independent of the plan that you're pointing to. Well, there's two different grounds. One is that paragraph 25 specifically covers a situation where there's a departure from the or an inconsistency with the fiscal plan. If you're a fiscal plan of 2022, we think that's covered. In addition, I take your other point, which is that even if there wasn't a paragraph 25, one probably could also argue that it's related to just based on the broad application of related jurisdiction. But I think both apply here. I don't think the court has to decide whether or not if somebody decided to pack the entire U.S. code into a plan of adjustment or a confirmation, whether that would fly. This clearly was something of which they knew they had these obligations, and to your honor's point, it's not conceivable that if the very next day the Commonwealth decided we're going to just go do labor reform, undo labor reform, even though it was imposed an obligation that was put on them from the beginning of time, that that would somehow be all right, and the court wouldn't retain jurisdiction to be able to address that. It seems to me that there probably are limits to the section 25 scope that may not be expressed in the terminology there. It seems to me that there may well be limits in terms of the core purposes of the confirmation plan. But one thing you haven't mentioned today is this isn't a bankruptcy. This is a PROMESA restructuring, and we've pointed out time and again that they are different. Could you speak to that? Well, I don't want to go too far into the first point because the court would like me to address related to jurisdiction, but to answer your question, I'll just say quickly, most of the concerns about the limited scope of jurisdiction that you see in cases like Stern from the Supreme Court arise out of the fact that the bankruptcy judge is an Article I judge. Because of that, if it's not related to jurisdiction or rising in jurisdiction, there just isn't going to be any jurisdiction to hear the case, at least to have the referral to the bankruptcy court. That's not the situation here at all. The language, for one thing, I've heard... You're not saying that related to, for purposes of PROMESA, is limited to constructions put on that term in bankruptcy cases, are you? This statute is different, even if the language is the same. I think that's right, Your Honor. If you disagree with me, just tell me. This is how I think of it. I think that's exactly right. The concerns, the constitutional overlay is obviously very to the Supreme Court in interpreting Section 1334. That doesn't exist here. The Article III judge here, Judge Swain, had jurisdiction regardless, and I think the related to jurisdiction piece of it can also be interpreted very broadly, consistent with the mission of this court in this particular case. That's my point, the final point that you made. I completely agree with that. I just want to mention quickly, because I think it's significant, the other side has not spent much time in their brief or in their oral argument describing what they think should happen next if they get the relief they want, and I think that's no accident. It's because it really brings out sort of the absurdity of the line of argument they're making here. I take it what they think should happen is, because this was decided by the wrong judge in their view or there wasn't related to jurisdiction, they want this case to be dismissed. The Oversight Board would then have to file the exact same action, citing Section 108 and Section 204, exact same causes of action, same statutes. It would then get, I guess, wheeled out within the District of Puerto Rico. In theory, that might go to Judge Swain. Maybe she's not in the wheel. I'm not sure. But regardless, another judge on the District of Puerto Rico, another Article III judge would then decide the case, apply basically the same procedures, because they've identified nothing different between the bankruptcy rules and the federal rules of procedure here, and comes the same conclusion as a matter of law. That can't be efficient or a good way to run the railroad. I don't think they would buy that last, as a matter of law, statement. I would think they would say there was some discretion here and it could go differently before another judge. But they have to be able to identify an actual harm here to substantive rights, the fact that it could come out differently, but they can't articulate anything wrong. The point is, this judge had authority to decide it. The fact that a different judge possibly could have come out differently, that's not enough for this to be something that the Court should recognize as a ground for appeal. Thank you, Your Honors. Thank you, Counsel. At this time, Mr. Mungovan, please introduce yourself on the record to begin. Good afternoon. May it please the Court, my name is Timothy Mungovan. I'm Counsel for the Oversight Board with Mr. Harris, and I will be arguing Section 204A claim. The decision below should be affirmed because there was no genuine issue of material fact and the Board was entitled to judgment as a matter of law under PROMESA Section 204A. In this case, there are four relevant steps to the analysis under 204A. First, the Governor has to submit a formal estimate and a certification. Two, the Board engaged then with the Governor and found that those submissions were insufficient and directed the Governor to comply by submitting the necessary estimate and certification. Step three, it's undisputed that the Governor did not do so, and step four, the Board considered it necessary, that's a quote from the statute, to, quote, ensure that the enactment and enforcement of Act 41 will not adversely affect the Government's compliance with the fiscal plan. Based on those four steps, the decision should be affirmed. And step one, the Governor did not submit a compliant estimate or certification under 204A. The Governor didn't submit a formal estimate of the Act 41 impact on the Commonwealth's revenues and expenditures for the full five-year period of the fiscal plan, as Judge Swain indicated. I think it's important to distinguish between the words fiscal plan and budget because what the Governor submitted as estimates were estimates from the Department of Labor and Department of for one year, fiscal year 21 and 22, which ended on June 30, 2022. The law did not even take effect until July of 2022 after the estimates were provided to the Board. I think it's important to point out, too, that with respect to the Treasury, while the Treasury concluded that the statute entailed, quote, no fiscal impact, there was no analysis or data included in the Treasury's estimate. The Treasury estimate also states that Act 41 would not have an incremental impact on just the certified budget for that agency. In that same estimate, the Treasury did not indicate whether the Act was or was not significantly inconsistent with the fiscal plan. Now, the Governor criticizes the Board's pointing that fact out and says the 204A exercise is not a box-checking exercise. That's not the Board's form. That's the Governor's form, and this is a statutory obligation of the Governor to confirm one way or the other whether the Act is or is not significantly inconsistent with the fiscal plan. It's also important to point out that the Governor, while he argues in one paragraph that he complied with the obligation to submit an estimate on the expenditures, he spends several pages of his reply brief arguing as to why he did not estimate the impact on revenues. What the Governor says is that the Treasury certification meant that the revenue effects were not reasonably estimable. That's on page 19 of the Governor's reply, but that's not what the Treasury said. The Treasury's estimate is at pages 2386 and 2387 of the appendix, and the word difficult does not appear there. Instead, it appears the Governor is referring to a FOFS certification and its original certification, which is on page 9 and 4197 of the appendix. The word difficult appears there, but it is not used to say that Act 41's impact on revenues is not possible to estimate. Instead, all that a FOFS says is that it's difficult to perform a reliable estimate and economic analysis geared towards accurately isolating and measuring Act 41's impact on Puerto Rico's economy. Not that it's not possible, but it's difficult to do. Is it correct that if the Governor did, let's assume without deciding that the Governor didn't comply, but if it had, that would not necessarily mean that either law would then be stricken? I'm sorry, I don't follow the question, Your Honor. Let's assume that the Governor did what you say it should have done. Would that mean that the statute then was automatically stricken? If the Governor had submitted what the Board required to be submitted, which was a formal estimating the impact on revenues, if it showed the impact on revenues that the Board believed it would show, as set forth in the Board's economist report to the Board, showing hundreds of millions of dollars in lost revenues over the five-year period of the fiscal plan, it would not have been automatically stricken under 204A. The Board's argument is the Board then, under 204A5, would say the Act is significantly inconsistent with the fiscal plan and the Act would impair the Government's ability to comply with the fiscal plan, so therefore the Board would then go to court and ask for a remedy saying that the Act would impair the Government's ability to comply with the fiscal plan. When you left out and the people of Puerto Rico who were paying attention to this would know what the costs of the legislation would be? That's a fair point, yes. With respect to that, that is a distinguishing point between 108 and 204. Judge Swain decided this case only on 204A, and as a result of that, that's why we're here on this appeal. We believe that the decision should be affirmed. I do want to point out one additional item, which is the standard of review that is applied to the Board's determinations. The Court doesn't have to address that particular issue in order to affirm the decision below, but this is an issue that is going to replay itself before this Court, I suspect, in the coming years based on additional pieces of legislation that the Board is seeing developed. The Board believes that this Court should determine, as part of this case, the proper standard of review that applies to the Board's determinations under 204A-5 and 204A generally, and 108A-2, and we submit that the proper standard is the ultra-virus standard. I see that I'm out of time. Thank you very much. Thank you, Counsel. At this time, Attorney Kramer, please go ahead and introduce yourself on the record to begin. You have a two-minute rebuttal. Matthew Kramer for the appellant. Three points. First, 306A-2 affirmates its jurisdictional nature such that if the Board cannot meet that test, there is no harmless error component to that analysis. It has to be met. Otherwise, the only remedy is dismissal of the action. Second, the Board said that they're not sure whether Judge Swain would or would not be on the wheel if this was filed properly in the District Court. Well, she would not be. Judge Swain would not be on the wheel if this was filed properly in the Title VI cases. That is one of our concerns here is that we know that the judge that was selected, if this was properly filed, would not be the judge to hear this case. Third. I think I hear them saying, if you're correct on that, that's not a jurisdictional defect. That's a case assignment, internal procedure, IOP process, but it's not a jurisdictional defect. And then they characterize your argument as being limited to subject matter jurisdiction. I think that's what it is. It is a jurisdictional defect because if you're in the Title III court, 30682 must be complied with. If you're in the District Court, this action is in the Title III court. Correct. And that's what makes it such a jurisdictional issue. And so the third point, because we are in the Title III court, you must meet one of those tests. Going to the close nexus test here, the Board says that they acknowledge that there is a line. There might be a line where legislation doesn't meet that test. But here they say it does. And I would say this falls far short. And if you read Judge Swain's opinion, she agrees. She says the review of the complaint does not find any support for the oversight board's contention that this results in an impairment or performance under the plan. She doesn't find that there's a close nexus based on the concerns of Act 41, that it might have some fiscal effects on the plan itself or the economy of Puerto Rico. She finds it based on the enforcement of the order. So the only way you find jurisdiction here is on the theory that paragraph 25 gives you a basis for a jurisdiction and that you're enforcing the order. But for the reasons we discussed in our papers, that paragraph extends you to Title I. It says pursuant to 108. And if you want to enforce that provision, you go to paragraph Title I to do so. Thank you, Your Honors. Thank you. And thank you to all counsel for the able presentations on this important case. That concludes argument in this case. This session of the Honorable United States...